OPINION
{¶ 1} Plaintiff-appellant, CD., appeals the decision of the Fayette County Common Pleas Court, Juvenile Division, terminating her shared parenting agreement and placing her son with the child's father.
 {¶ 2} Defendant-appellee, D.L. ("father"), and appellant are the parents of a four-year-old son (born in December 2002). The parties were never married. In June 2004, the trial *Page 2 
court adopted the parties' shared parenting agreement; the child resided primarily with appellant and father was granted visitation. On January 14, 2005, father filed a motion to terminate the shared parenting agreement and to reallocate parental rights and responsibilities. A hearing on the motion revealed the following:
 {¶ 3} The parties are both in their early 20s, both legally blind, and cannot drive. As a result, both parties mainly rely on relatives and/or friends for transportation, especially to pick up and drop off their son for visitation. Unlike appellant, father can read. Both parties love their son, are bonded with him, and appropriately care for him. The parties, however, do not get along and do not communicate or cooperate well. Father lives with his parents and brother in a large farmhouse, works in a pizzeria since August 2003, graduated from the Ohio State School for the Blind in 2002, and intends to have a career in the computer field (with magnification software if need be). On the days father must work when he has his son, his mother, aunt, or brother care for the child.
 {¶ 4} Appellant has lived in five different locations since June 2004, going back and forth between the Columbus area and Washington Court House. At the time of the hearing, appellant was living in Reynoldsburg with a friend who is partially sighted and cannot drive, and with the friend's aunt who is sighted. Depending on where appellant lives, a round trip between the parties' residences is either a two-hour or four-hour round trip. Father, via his parents, provides most (if not all) of the transportation. Appellant does not work and has never worked. At the time of the hearing, she had applied for a seasonal job at a park. If appellant gets a job, she will put her son in daycare. Appellant does not have a GED and has been inconsistent with her schooling efforts. Appellant started having seizures in 2004, where she blacks out for a few minutes, but controls them with medication and has not had a seizure in eight months. In November 2005, appellant was raped in her residence by her sister's ex-boyfriend while her son was asleep. Appellant did not report the rape and did not go to the *Page 3 
hospital. She simply went to her doctor to make sure she had not contracted any diseases.
 {¶ 5} Appellant testified she has been dating an individual named Brian on and off for three years. Her last contact with him was in October 2005. Brian lives and works in Cleveland. Appellant does not know his address and has never been to his house. Apparently, when appellant goes to Cleveland to visit him, they stay in a hotel. During a visit in 2004, appellant was unable to find a way to go back home and "was stuck" in Cleveland for a month. As a result, father had the child for all that time.
 {¶ 6} In a report filed in December 2005, the child's Guardian Ad Litem (GAL) expressed his belief that "[the child's] best interest would be served by placing his custody with his father[.]" The GAL noted that appellant and her son "relate very well to one another and he is, quite obviously, the center of her life. He is well dressed, well groomed and well cared for. * * * There is no question about the love and affection [the child] receives from either parent but [appellant's] lack of transportation, lack of employment and almost total reliance on others make placing [the child] with her a problem." The GAL's report was based on a home visit when appellant was still living in Washington Court House. At the hearing, the GAL testified he had not seen appellant's new residence in Reynoldsburg. However, it was still his recommendation that custody be granted to father: "[short of the child being abused in the father's home,] I can't think of any reason for changes[.] I don't know that [appellant] can operate independently. She has to rely a lot on other folks to help her, and I don't know that that's changed or ever will change."
 {¶ 7} In March 2006, the magistrate terminated the shared parenting agreement, and after finding that it would be in the child's best interest, granted custody of the child to father. Appellant filed objections to the magistrate's decision. On August 10, 2006, the trial court found two minor objections well-taken. The court, however, overruled appellant's main objection relating to the child's best interest and the harm likely to be caused by a change of *Page 4 
environment. The trial court adopted the magistrate's decision (as modified based on appellant's sustained objections), terminated the shared parenting agreement, and granted legal custody of the child to father and visitation to appellant.
 {¶ 8} Appellant appeals, raising two assignments of error:
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT'S AWARD OF CUSTODY TO DEFENDANT-APPELLEE WAS AN ABUSE OF DISCRETION."
 {¶ 11} Assignment of Error No. 2:
 {¶ 12} "THE TRIAL COURT ERRED IN FINDING THAT IT IS IN THE BEST INTEREST OF THE CHILD TO CHANGE RESIDENTIAL PARENTS."
 {¶ 13} In her first assignment of error, appellant argues that the award of custody to father was an abuse of discretion because the award was based on facts that were different from those existing at the time of the hearing. Specifically, appellant argues that the GAL (in his report) and the magistrate improperly relied on evidence of appellant's living situation in Washington Court House when appellant was no longer living there at the time of the hearing. Appellant also argues that the trial court "did not have enough of a basis upon which to adopt the magistrate's decision." In her second assignment of error, appellant argues that the change of custody was against the manifest weight of the evidence: "If the court had adhered to the weight of the evidence, the * * * child's current good care by his mother would have outweighed the bad effects of shuffling the child to a new home * * * [and] should have been enough [to] grant retention of custody with [a]ppellant."
 {¶ 14} The standard of review in custody cases is whether the trial court abused its discretion. Davis v. Flickinger, 77 Ohio St.3d 415,416-417, 1997-Ohio-260. Abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. The appellate court must keep in *Page 5 
mind that the trial court is better equipped to examine and weigh the evidence, determine the credibility of the witnesses, and make decisions concerning custody. Terry L. v. Eva E., Madison App. No. CA2006-05-019,2007-Ohio-916, ¶ 9. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. CE. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, 280.
 {¶ 15} On appeal, the parties base their arguments on R.C.3109.04(E)(1)(a). Likewise, in granting custody of the child to father, the trial court relied in part on R.C. 3109.04(E)(1)(a). This provision prohibits a trial court from modifying a prior decree allocating parental rights and responsibilities, including a shared parenting decree, unless it finds that there has been a change in circumstances and that modification is in the child's best interest. In applying these standards, the court must retain the residential parent designated by the prior decree, unless a modification is in the best interest of the child and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. R.C. 3109.04(E)(1)(a)(iii).
 {¶ 16} Father, however, sought to terminate the shared parenting agreement. His motion was therefore governed by R.C. 3109.04(E)(2)(c).In re Wright (May 27, 1997), Brown App. No. CA96-10-019. At this point, we note that although the trial court initially considered appellant's objections to the magistrate's decision and father's motion to terminate the shared parenting agreement under the wrong standard, any error was harmless because the trial court also considered what would be the best parenting arrangement for the child before granting custody of the child to father. See Gambrell v. Gambrell (Jan. 31, 2000), Preble App. No. CA99-04-011.
 {¶ 17} R.C. 3109.04(E)(2)(c) provides that "[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under [R.C] *Page 6 
3109.04(D)(1)(a)(i) upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under [R.C.] 3109.04(D)(1)(a)(ii) or (iii) if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children."
 {¶ 18} At this juncture, we wish to point out that under the first part of R.C. 3109.04(E)(2)(c), a trial court may terminate a shared parenting agreement approved under R.C. 3109.04(D)(1)(a)(i) simply upon the request of one or both of the parents. While the court may also terminate the shared parenting agreement by finding it is not in the best interest of the child, it is not required to so find before it can terminate the agreement. By contrast, under the second part of R.C.3109.04(E)(2)(c), a trial court may terminate a shared parenting agreement approved under R.C. 3109.04(D)(1)(a)(ii) or (iii) only if it determines that it is not in the best interest of the child. In the case at bar, the parties' shared parenting agreement was approved under R.C.3109.04(D)(1)(a)(i). Thus, the trial court was not required to first find that it was not in the best interest of the child (which it did not) before it could terminate the shared parenting agreement.
 {¶ 19} This court has held that the requirement in R.C.3109.04(E)(1)(a) to find a change in circumstances is not triggered when there is a request to terminate a shared parenting agreement. See, e.g.,A.S. v. D.G., Clinton App. No. CA2006-05-017, 2007-Ohio-1556, ¶ 31. Other Ohio appellate courts agree. See Myers v. Myers,153 Ohio App.3d 243, 2003-Ohio-3552; but see, contra, Oliver v. Arras, Tuscarawas App. No. 2001 AP 11 0105, 2002-Ohio-1590. Likewise, this court has held that a trial court is not required to balance the harm of an environment change against the advantages in order to terminate a shared parenting agreement. See A.S at ¶ 34. Thus, any findings made by the trial court in its judgment entry relative to a change in circumstances, and the balance between the harm of *Page 7 
an environment change and its advantages were superfluous.
 {¶ 20} When a shared parenting agreement is terminated, the trial court determines custody ab initio under the factors set forth in R.C.3109.04(F)(1), taking into account what would be in the child's best interest. Gambrell, Preble App. No. CA99-04-011. Those factors include (1) the wishes of the child's parents regarding the child's care; (2) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (3) the child's adjustment to the child's home, school, and community; (4) the mental and physical health of all persons involved in the situation; (5) the parent most likely to honor and facilitate court-approved parenting time rights or visitation; (6) whether one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; and (7) whether either parent has established a residence, or is planning to establish a residence, outside of Ohio.
 {¶ 21} In addition, R.C. 3109.04(F)(2) sets forth factors for a court to consider when determining whether shared parenting (as a form of custody) is in a child's best interest. Those factors include (1) the parents' ability to cooperate and make joint decisions with respect to the children; (2) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (3) any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent; (4) the geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting; and (5) the recommendation of the child's GAL.
 {¶ 22} The trial court made numerous findings related to the best interest factors, including the following findings: (1) the child has good interaction and relationships with both parents, and is adjusted to both parents' homes; (2) both parents are legally blind; appellant *Page 8 
has had seizures which she controls with medication; appellant lives with a friend who is also blind, and the friend's aunt who is sighted; (3) father has had to pick up the child from seven different places, and has done all the transportation both ways for all visits since an interim order from February 2006; (4) appellant has denied visitation one time, saying 8 p.m. was too late, and the visit would be forfeited; the visit was eventually made up but not until after a contempt charge was filed; (5) father had the child for one month when appellant was in Cleveland; (6) appellant gave father 60 extra days in 2005; and (7) neither party has committed a criminal offense regarding a minor child.
 {¶ 23} The trial court also made the following findings under R.C.3109.04(F)(2) with regard to shared parenting: (1) the parties do not cooperate or make joint parenting decisions; (2) there is little evidence that either parent encourages the child in his love for the other parent; (3) appellant has exposed the child to an environment where crimes of violence occurred against her (when she was raped); she did not report the crime, and there is no evidence as to when she left the residence and removed the child from the environment; (4) the parties are one hour apart if appellant resides in Columbus and two hours apart if she resides in Washington Court House; father has had to provide all the transportation for his visits since February 2006; and (5) the GAL recommends that custody be granted to father.
 {¶ 24} Finally, the trial court made these additional findings: (1) appellant has had five residences since 2004; (2) both parties need a support system; father's support system has proven to be consistent and reliable; appellant's support system changes frequently and is not necessarily reliable; at the time of the hearing, appellant had lived in Reynoldsburg for one to two months and had not yet been approved for assistance by Mainstream; and (3) appellant twice arrived to pick up the child without a car seat, and one was loaned to her by father.
 {¶ 25} The trial court reviewed the filings and the transcript of the hearing before it terminated the shared parenting agreement and granted legal custody of the child to father. *Page 9 
Upon thoroughly reviewing the record, we find that it supports all of the trial court's foregoing findings, and that competent, credible evidence supports the trial court's decision. We also find that appellant's arguments under her assignments of error are without merit. While the GAL's report was based upon appellant's living situation in Washington Court House, the GAL reiterated his recommendation at the hearing that custody be granted to father even if appellant had a new living situation. Appellant does not explain why or how the trial court "did not have enough of a basis upon which to adopt the magistrate's decision." Finally, as noted earlier, the trial court was not required to balance the harm of a change of environment against its advantages.
 {¶ 26} We therefore find that the trial court did not abuse its discretion by terminating the shared parenting agreement and by granting legal custody of the child to father. Appellant's two assignments of error are overruled.
 {¶ 27} Judgment affirmed.
 BRESSLER and POWELL, JJ., concur. *Page 1