[Cite as *Manis v. Manis*, 2014-Ohio-5086.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| DAVID BRIAN MANIS, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2014-05-070 |
| | : | O P I N I O N |
| - vs - | | 11/17/2014 |
| | : | |
| LUCIA PAULETTE MANIS, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 11DR34549

Jeffery E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for plaintiff-appellee

Ernst & Associates, David E. Ernst, Emma K. Franklin, 11 South Broadway, Suite 200, Lebanon, Ohio 45036, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1}  Defendant-appellant, Lucia Paulette Manis (Mother), appeals from a decision of the Warren County Court of Common Pleas, Domestic Relations Division, terminating her shared parenting agreement and placing her daughter with the child's father, plaintiff-appellee David Brian Manis (Father).  For the reasons set forth below, we affirm.

{¶ 2}  Mother and Father are the parents of a five-year-old daughter, I.M., born on

April 7, 2009. The parties were once married, but divorced in September 2012. At the time of their divorce, the parties entered a shared parenting plan. The shared parenting plan provided that "[e]ach parent shall be considered the residential parent," though Mother's residence would be considered the primary place of residence for school purposes. At this time, Mother lived in Springfield, Ohio, and Father lived in Springboro, Ohio. Pursuant to the shared parenting plan, the parties were to share equally in parenting time on a week-to-week basis until I.M. entered school. At that time, Father was to have parenting time on alternating weekends from Friday afternoon until Tuesday at 7:00 p.m.

{¶ 3} A short time after the divorce, Father moved from Springboro to Camden, Ohio to live with his parents and Mother remarried. Following her marriage to Joe Matthews in October 2012, Mother continued to reside in Springfield. The parties abided by the terms of the shared parenting plan during this time. However, in June 2013, Mother separated from Matthews following a domestic violence incident in which Matthews physically and sexually assaulted Mother in their home after Mother confronted Matthews about his use of steroids. I.M. was present in the home when the assault occurred. Immediately after the assault, Mother left Springfield for Youngstown, Ohio to be with her family. I.M. went with Mother to Youngstown, where Mother has remained since mid-June 2013. Father was not informed of Mother's move to Youngstown until after the move had occurred.

{¶ 4} On August 22, 2013, Father filed a motion to modify the shared parenting plan or, in the alternative, to terminate the shared parenting plan and be named the custodial and residential parent of I.M. A hearing on the motion was held on January 23, 2014, before a magistrate. At the hearing, Father testified on his own behalf and called his mother, Sandra Manis, and his sister, Rebecca Pauline Howard, as witnesses. Mother also chose to testify on her own behalf at the hearing, but she elected not to present any additional witnesses.

{¶ 5} On January 27, 2014, the magistrate issued a decision granting Father's motion

- 2 -

and terminating the parties' shared parenting plan. The magistrate found that Mother's move to Youngstown constituted a substantial change of circumstances and that it was in I.M.'s best interest that the shared parenting plan be terminated and Father named the custodial parent. Mother filed objections to the magistrate's decision, arguing that the decision was against the manifest weight of the evidence and that the trial court failed to adequately consider and make findings with respect to the best interest factors set forth in R.C. 3109.04(F)(1)(a)-(j). On April 14, 2014, the trial court overruled Mother's objections, finding that Mother's "move constitutes a change in circumstance under R.C. 3109.04(E)(1)(a)" and the "factors found in R.C. 3109.04(F)(1) * * * weigh in favor of granting custody to Father."

{¶ 6} Mother timely appealed, raising two assignments of error. As the assignments of error are related, we will address them together.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED BY NOT SPECIFICALLY FINDING THE FULFILLMENT OF THE ELEMENTS OF OHIO REVISED CODE 3109.04(E)(1)(a), WHICH REQUIRES A FINDING OF BOTH A "CHANGE OF CIRCUMSTANCES" AND "BEST INTEREST OF THE CHILD" AND THUS, IT IS INAPPROPRIATE THAT FATHER WAS NAMED CUSTODIAL PARENT.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THAT OHIO REVISED CODE R.C. 3109.04(E)(1)(a) REQUIRES THE COURT TO RETAIN THE RESIDENTIAL PARENT, SAVE FOR A FINDING OF BEST INTEREST AND THREE ADDITIONAL FACTORS, AND AS THE TRIAL COURT DID NOT MAKE SUCH A FINDING, THE STATUTE WAS INCORRECTLY APPLIED.

{¶ 11} In her first and second assignments of error, Mother argues that the trial court incorrectly applied R.C. 3109.04(E)(1)(a) in determining that there was a substantial change of circumstances and that it was in I.M.'s best interest that the shared parenting plan be

terminated. Mother contends that her move to Youngstown was not a change in circumstance. She further contends that the trial court's best interest analysis was incomplete as the court did not address all of the factors set forth in R.C. 3109.04(F)(1)(a)-(j) and did not consider all relevant evidence in determining that Father should be named the residential parent.

{¶ 12} The standard of review in custody cases is whether the trial court abused its discretion. *C.D. v. D.L.*, 12th Dist. Fayette No. CA2006-09-037, 2007-Ohio-2559, ¶ 14, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 416-417 (1993). An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying the abuse-of-discretion standard, an appellate court's role is to ascertain whether the award of custody is supported by competent and credible evidence." *In re D.M.*, 196 Ohio App.3d 50, 2011-Ohio-3918, ¶ 25 (12th Dist.). Further, in reviewing a trial court's decision, an appellate court "may not substitute its judgment for that of the trial court because the 'discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *Renner v. Renner*, 12th Dist. Clermont No. CA2014-01-004, 2014-Ohio-2237, ¶ 16, quoting *Caldwell v. Caldwell*, 12th Dist. Clermont Nos. CA2008-02-019 and CA2008-03-021, 2009-Ohio-2201, ¶ 15.

{¶ 13} As an initial matter, we note that Mother and Father base their arguments on appeal around the requirements of R.C. 3109.04(E)(1)(a). Likewise, in granting custody of I.M. to Father, the trial court relied in part on R.C. 3109.04(E)(1)(a). This provision prohibits a trial court from *modifying* a prior decree allocating parental rights and responsibilities, including a shared parenting plan, unless the court finds that there has been a change in circumstances and that *modification* is in the child's best interest. *C.D.*, 2007-Ohio-2559 at ¶

15, citing R.C. 3109.04(E)(1)(a). However, in the present case, Father sought, and the trial court granted, a termination of the parties' shared parenting agreement. Father's motion was therefore governed by R.C. 3109.04(E)(2)(c). *See id.* at ¶ 16; *A.S. v. D.G.*, 12th Dist. Clinton No. CA2006-05-017, 2007-Ohio-1556, ¶ 31-32. Although the trial court initially considered Father's motion to terminate the shared parenting plan under the wrong standard, we find such error to be harmless as the trial court also considered what the best parenting arrangement for the child would be before granting custody of I.M. to Father. *See C.D.* at ¶ 16; *Gambrell v. Gambrell*, 12th Dist. Preble No. CA99-04-011, 2000 WL 146028, *2 (Jan. 31, 2000). Any findings the trial court made in its entry relative to a change in circumstances were superfluous.

{¶ 14} R.C. 3109.04(E)(2)(c) provides in relevant part the following:

> The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under [R.C. 3109.04(D)(1)(a)(i)] * * * upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under [R.C. 3109.04(D)(1)(a)(ii) or (iii)] * * * if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children.

Accordingly, under the first part of R.C. 3109.04(E)(2)(c), a trial court may terminate a shared parenting plan approved under R.C. 3109.04(D)(1)(a)(i) simply upon the request of one or both of the parents. *In re A.B.*, 12th Dist. Butler No. CA2009-10-257, 2010-Ohio-2823, ¶ 23, citing *C.D.* at ¶ 18. While a court may also terminate the shared parenting plan by finding that it is not in the best interest of the child, it is not required to so find before it can terminate the plan. *Id.* By contrast, under the second part of R.C. 3109.04(E)(2)(c), a trial court may terminate a shared parenting plan approved under R.C. 3109.04(D)(1)(a)(ii) or (iii) only if it determines that the plan is not in the best interest of the child. *Id.*

{¶ 15} In the present case, the parties entered into a shared parenting plan in accordance with R.C. 3109.04(D)(1)(a)(i). Therefore, the trial court was not required to first find that shared parenting was not in the best interest of the child (even though it did) before it could terminate the shared parenting plan. *See id* at ¶ 24; *C.D.*, 2007-Ohio-2559 at ¶ 18.

{¶ 16} Nevertheless, R.C. 3109.04(E)(2)(d) states that when a court terminates a shared parenting plan approved under R.C. 3109.04(D)(1)(a)(i), the court must then "issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." Division (B) of the statute requires that when allocating parental rights and responsibilities, a court must consider a child's best interests. R.C. 3109.04(B). *See also In re A.B.*, 2010-Ohio-2823 at ¶ 25. In considering a child's best interests, the court must consider the factors set forth in R.C. 3109.04(F)(1), which include: the wishes of the parents; the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interest; the child's adjustment to home, school and community; the mental and physical health of all persons involved in the situation; the parent more likely to honor and facilitate visitation; whether one parent has denied the other parenting time; whether either parent has failed to make all child support payments; and whether either parent has established or is planning to establish a residence outside of Ohio.

{¶ 17} In addition to the factors listed above, R.C. 3109.04(F)(2) sets forth factors for a court to consider when determining whether shared parenting (as a form of custody) is in a child's best interest. These factors include: the parent's ability to cooperate and make joint decisions with respect to the child; the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; any history of, or potential for, child abuse, spouse abuse, domestic violence, or parental kidnapping; the geographic

- 6 -

proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting; and the recommendation of the child's guardian ad litem if one has been appointed.

{¶ 18} Here, the trial court made numerous findings related to the best interest factors, including the following findings: (1) Mother wishes to have I.M. reside with her in Youngstown and Father wishes to have I.M. reside with him if Mother resides in Youngstown; (2) I.M. has a close relationship with family members on Father's side—she spends time with Father's sisters, Father's nieces and nephews, and Father's mother, who has provided daycare for I.M. since her birth; (3) I.M. is doing well in school in Youngstown and she has made friends in Youngstown; (4) there was no evidence concerning problems with either parent's mental or physical health; (5) Father has not denied Mother her parenting time, and although Mother did not deny Father parenting time, Mother failed to follow the spirit of the parties' shared parenting plan when she unilaterally moved to Youngstown without telling Father; (6) Father fell behind in child support in 2013, and as of the date of the January 23, 2013 hearing, was $300 behind in his child support obligation; (7) neither Mother nor Father had been convicted or pled guilty to child abuse or child neglect; and (8) although Mother has not moved outside the state of Ohio, she did relocate almost four-and-one-half hours away from Father's residence.

{¶ 19} The court also made the following findings relevant to the factors set forth in R.C. 3109.04(F)(2): (1) Mother did not involve Father in the decision to enroll I.M. in preschool in Youngstown or inform him that I.M. had been signed up to participate in indoor soccer in Youngstown; (2) Mother admits her current husband (Matthews) was using and selling illegal steroids while they were living together and while I.M. was living with them; (3) Mother's move necessarily means that one parent will be unable to regularly attend I.M.'s extracurricular events and school events or be able to help her with homework and projects;

- 7 -

and (4) the physical distance between the two parties as well as their inability to communicate and share in decision making render shared parenting impractical.

{¶ 20} In addition to the above mentioned findings, the court also considered Mother and Father's living arrangements and their income. With respect to Mother, the court noted that Mother had moved from the marital home she shared with Father in Springboro, Ohio into a residence she shared with Matthews in Springfield, Ohio, and then moved from the Springfield residence into her mother's home in Youngstown, Ohio. In August 2013, Mother obtained a two-bedroom apartment in Youngstown to share with I.M. Father moved from the marital home he shared with Mother in Springboro into his parent's two-bedroom rental home in Camden, Ohio. Father's parents occupy one bedroom, I.M. occupies the other bedroom, and Father sleeps in the basement. Mother is currently employed by the Ohio Department of Jobs and Family Services in Youngstown and earns approximately $30,000 a year. Father lost his job in December 2013 and is collecting unemployment while he looks for work. At the January 23, 2014 hearing, Father testified that he anticipates making around $30,000 once he finds employment.

{¶ 21} Having thoroughly reviewed the record before us, we conclude that the findings made by the trial court were supported by competent and credible evidence. Although Mother contends the trial court failed to address all of the best interest factors set forth in R.C. 3109.04(F)(1) in issuing its decision, the record demonstrates otherwise. While the trial court's decision does not contain a specific listing or citation to each of the factors set forth in R.C. 3109.04(F)(1), the court clearly indicated that had considered "all the factors in Ohio Revised Code Section 3109.04" in issuing its decision. A trial court is not required to set forth its analysis as to each factor enumerated in R.C. 3109.04(F) so long as its decision is supported by some competent, credible evidence. *See Smith v. Smith*, 11th Dist. Trumbull No. 2009-T-0064, 2010-Ohio-3051, ¶ 10. Here, the findings made by the trial court align with

those factors set forth in R.C. 3109.04(F)(1). The court clearly considered the parties' wishes, I.M.'s relationships with Mother and Father and her extended family, I.M.'s school, home, and community environments, the mental and physical health of the parties, Father's arrearage on his child support obligation, the physical location of Mother's and Father's homes, and how the four-and-one-half hour distance between Mother's home and Father's home hindered visitation and the practicality of shared parenting. Accordingly, we find no merit to Mother's argument that the trial court failed to fully consider and address the best interest factors set forth in R.C. 3109.04(F)(1).

{¶ 22} We further find no merit to Mother's contention that the trial court, in determining that Father should be named residential parent, ignored evidence. Mother contends the trial court failed to consider evidence tending to show that Father is not involved in certain aspects of I.M.'s life, such as her "secular and religious education," and that he is unable to "assume parenthood without the daily assistance of his parents." Contrary to Mother's contentions, the record demonstrates that the trial court considered the evidence she presented on these matters. However, in considering these issues, the court did not find the fact there is not a religious school close to Father's current residence or that Father has never lived alone with I.M. and utilizes his own mother as a daycare provider to be detrimental to Father's ability to parent or be named the custodian of the child. "It is the role of the trial court to determine the relative weight to assign each factor, in relation to the others, when determining the [child's] best interest." *Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 18. We will not second-guess the trial court's determination of the weight to be given to these factors. *See In re A.B.,* 2010-Ohio-2823 at ¶ 35.

{¶ 23} Given the evidence presented, we find that the trial court did not abuse its discretion in terminating the shared parenting plan and designating Father the residential

parent and legal custodian of the parties' minor child. The trial court's decision is supported by competent, credible evidence. Accordingly, Mother's first and second assignments of error are overruled.

{¶ 24} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.