[Cite as *Ackley v. Haney*, 2022-Ohio-2382.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| ADAM ACKLEY, | : | |
| Appellant, | : | CASE NO. CA2021-07-017 |
| | : | O P I N I O N |
| - vs - | | 7/11/2022 |
| | : | |
| KODI HANEY, | : | |
| Appellee. | : | |


APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. AD20110531


Treynor Law, and Shannon Marie Treynor, for appellant.

Mary King Law, and Mary E. King, for appellee.



**PIPER, P.J.**

{¶1}   Appellant, Adam Ackley ("Father"), appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, terminating his shared parenting plan and designating appellee, Kodi Haney ("Mother"), as residential parent and legal custodian of their son.

{¶2}   Father and Mother were never married, but had a child together, C.A., born on September 19, 2011.  In 2012, the juvenile court adopted a shared parenting plan.  The plan directed the parenting times and other parental-related issues.  The parties worked

well together until approximately the time of the COVID-19 pandemic or a little later when Father remarried in August 2020.

{¶3} Prior to the COVID-19 pandemic, Mother commuted regularly for her job and therefore dropped C.A. at Father's home for transportation to and from school. This arrangement worked, in part, because Father derives his income from a military service-related disability and considers himself a stay-at-home dad. Although disabled, Father testified that none of his disabilities have any impact on his ability to effectively parent the child. Due to the pandemic causing widespread closures of schools and the fact that Mother was then permitted to work from home, Mother testified that she began handling daily schooling responsibilities.

{¶4} Prior to the start of the new school term, Father approached Mother and asked about homeschooling C.A. if the school mandated mask-wearing.[1] Although Father insists Mother was amenable to homeschooling, Mother claims she adopted a wait and see approach. After weighing the pros and cons, Mother decided that homeschooling was not appropriate for C.A. Mother believed there were significant social and developmental benefits of attending in-person schooling.

{¶5} The parties had further conflict regarding the shared parenting plan due to a disagreement over C.A.'s participation in youth football. Father initially enrolled C.A. in the program, in which he served as a coach, but later decided that C.A. would no longer participate.[2] There was significant testimony concerning Father's tenure as football coach particularly since he was terminated from that role. Father introduced testimony from a member of the board of the football program, Ronnie Grim. Grim testified that some parents

---

1. Father did not want C.A. to be forced to wear a mask, breathing in his own air. However, Mother testified that C.A. had no issue with wearing a mask in school.

2. Father testified that C.A. no longer wanted to participate in football while Mother claimed that Father unilaterally disenrolled him from the team and withheld his football equipment.

had concerns about Father disciplining the children, such as with push-ups and running. Grim also acknowledged that Father can be difficult to deal with "at times." Meanwhile, Mother introduced testimony from a witness that Father was very agitated and flustered during youth football and displayed instances of inappropriate behavior.

{¶6} Mother testified that youth football was one of the issues that started to interfere with the shared parenting plan. Among other things, Mother testified that she wanted to allow C.A. to continue to participate. However, when she took C.A. to a practice, she learned that Father produced court paperwork to the football program indicating his authority to remove C.A. from the team. There was testimony that Father told a board member he had custody of C.A. Mother then had to produce the shared parenting plan before C.A. was allowed to practice again.

{¶7} In August 2020, Father remarried. Father alleges that his marriage impacted the operation of the shared parenting plan. Father complains that Mother no longer dropped C.A. at his home for transportation to and from school. He also alleges that Mother unilaterally decided to permit C.A. to attend in-person schooling notwithstanding the mask mandate. Mother disputes Father's characterization, instead claiming that her ability to work from home allowed her to handle school transportation issues without Father's assistance. She insisted that Father was informed about the decision to return to in-person school and that returning to in-person instruction was in C.A.'s best interest.

{¶8} On October 12, 2020, Father filed a motion for change of parental rights and responsibilities and requested a modification of the parenting schedule and residential parent designation.[3] On February 8, 2021, Mother filed an alternative motion requesting

---

3. Although Father requested a modification of the parenting plan, he also stated that he and Mother are "unable to agree" with matters pertaining to schooling. However, during the hearing Father offered conflicting accounts regarding his wishes. At one point Father acknowledged that he was seeking "full custody."

that she be designated the residential parent if the court terminated the shared parenting plan. At a hearing on the matter, the juvenile court heard testimony from several individuals, including Father, his new wife, Mother, Mother's coworker, the guardian ad litem ("GAL") and two individuals associated with the youth football program.[4] The child was interviewed in camera by the juvenile court.

{¶9} Following the hearing, the juvenile court terminated the shared parenting agreement, designated Mother as the residential parent, and awarded custody of the child to Mother. The juvenile court did not modify the parenting schedule but did issue orders concerning child support. Father now appeals the juvenile court's decision, raising three assignments of error for review.

{¶10} Assignment of Error No. 1:

{¶11} THE TRIAL COURT ERRED IN TERMINATING THE SHARED PARENTING PLAN.

{¶12} In his first assignment of error, Father argues the juvenile court abused its discretion in terminating the shared parenting plan in naming Mother as the residential parent and legal custodian of C.A.

{¶13} It is undisputed a juvenile court has discretion in custody matters, and its decision in such matters will not be reversed absent an abuse of that discretion. *In re A.D.*, 12th Dist. Fayette No. CA2012-07-023, 2013-Ohio-1308, ¶ 15. An abuse of discretion is more than an error of law or judgment; it implies that the juvenile court acted unreasonably, arbitrarily, or unconscionably. *Id.*

{¶14} According to R.C. 3109.04(E)(2)(c), a court may terminate a shared parenting

---

4. Father also introduced testimony from an individual he knows through his church who also served as GAL for "his prior case." However, this individual offered limited testimony and denied conducting any investigation into the parenting differences between Mother and Father.

decree upon request of one or both of the parents, or if the shared parenting plan is not in the best interest of the child. The decision to terminate a shared parenting plan and to then award custody of the child to one parent over the other is determined by a consideration and balancing of the factors set forth in R.C. 3109.04(F)(1) and (F)(2).

{¶15} To determine what is in the best interest of a child, R.C. 3109.04(F)(1) requires a court to consider all relevant factors. *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 8. These factors include, but are not limited to: (1) the wishes of the parents; (2) the child's interaction and interrelationship with his parents, siblings, and other persons who may significantly affect the child's best interest; (3) the child's adjustment to home, school, and community; (4) the mental and physical health of all persons involved; and (5) the likelihood that the caregiver would honor and facilitate visitation and parenting time. *Denier v. Carnes-Denier*, 12th Dist. Warren No. CA2015-11-106, 2016-Ohio-4998, ¶ 14.

{¶16} "When determining whether shared parenting is in a child's best interest, the trial court must consider the additional factors set forth in R.C. 3109.04(F)(2)." *Chaney v. Chaney*, 12th Dist. Warren No. CA2021-09-087, 2022-Ohio-1442, ¶ 37, citing *Adkins v. Adkins*, 12th Dist. Butler No. CA2016-12-227, 2017-Ohio-8636, ¶ 11. These factors are (1) the ability of the parents to cooperate and make decisions jointly, with respect to the child; (2) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (3) any history or potential for abuse; (4) the geographic proximity of the parents to one another; (5) and the recommendation of the guardian ad litem, if the child has a guardian ad litem. R.C. 3109.04(F)(2)(a) thru (e). "While no factor in R.C. 3109.04(F)(2) is dispositive, effective communication and cooperation between the parties is paramount in successful shared parenting." *Seng v. Seng*, 12th Dist. Clermont No. CA2007-12-120, 2008-Ohio-6758, ¶ 21.

{¶17}  After a thorough review of the record, we find that the juvenile court's decision to terminate the shared parenting plan and name Mother as the residential parent and legal custodian of the child was not unreasonable, arbitrary, or unconscionable.  The juvenile court considered the factors set forth in R.C. 3109.04(F) in allocating parental rights and responsibilities and found that the shared parenting plan was no longer in the best interest of C.A.  Although Father testified at the hearing that he did not want to terminate the shared parenting plan, only modify it, the record is replete with instances of disagreement between Mother and Father.  Furthermore, in Father's initial filing to change parental rights and responsibilities, he specifically mentioned the parties' inability to agree on schooling.  In addition, Mother testified that the shared parenting plan was no longer working.

{¶18}  The evidence established that C.A. is loved by both parents and that both parents live in the same community.  In fact, they are practically neighbors, living only about 500 feet from one another.  However, the juvenile court expressed concern about Father's behavior, and that he has put C.A. "in the middle of [Father's] disputes with Mother."  The juvenile court stated that this could create mental health issues for C.A. and expressed concerns with Father's own mental health.  The juvenile court also found that Mother was more likely to facilitate court approved parenting time rights based upon the evidence presented in the hearing.

{¶19}  On appeal, Father argues that the juvenile court's decision was predicated on "relatively minor factual findings which tipped the best interest scales" in favor of Mother.  He acknowledged the testimony concerning his irritability and temper, but suggests those episodes were exacerbated by his failed experiment in coaching football and his frustration with mandatory masks in school.  He further claims the juvenile court "punish[ed]" him with its decision and that the juvenile court's decision was "draconian."  Noticeably Father does not address how his behavior impacted C.A.

{¶20} Contrary to his arguments otherwise, the juvenile court's decision did not set out to punish Father. Rather, the record reveals that the parties were no longer able to maintain their original shared parenting plan. C.A.'s best interest required termination of the shared parenting plan, and it was incumbent on the juvenile court to designate one of the parties as residential parent and custodian of the child. The juvenile court heard competing testimony and ultimately found it was in C.A.'s best interest for Mother to be named residential parental and legal custodian. As this court has previously stated "[i]t is the role of the [juvenile] court to determine the relative weight to assign each factor, in relation to the others, when determining the [child's] best interest." *Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 18. We will not second-guess the juvenile court's determination of the weight to be given to these factors when there is, credible evidence supporting the juvenile court's determination. *Manis v. Manis*, 12th Dist. Warren No. CA2014-05-070, 2014-Ohio-5086, ¶ 22.

{¶21} Given the evidence presented, we find that the juvenile court did not abuse its discretion in terminating the shared parenting plan and designating Mother the residential parent and legal custodian of the parties' minor child. The juvenile court's decision is supported by competent, credible evidence. Accordingly, Father's first assignment of error is overruled.

{¶22} Assignment of Error No. 2:

{¶23} THE COURT ERRED IN PERMITTING THE GUARDIAN AD LITEM'S TESTIMONY AND REPORT IN (sic) AS EVIDENCE WHEN NEITHER COMPLIED WITH SUP. R. 48(D).

{¶24} In his second assignment of error, Father argues the juvenile court erred by permitting the GAL to testify and by accepting the GAL's written report, complaining that the GAL did not comply with the Rules of Superintendence.

{¶25} According to Rules of Superintendence, Sup.R. 48 through 48.07 shall apply in all domestic relations and juvenile cases where a court appoints a GAL to act in the best interest of a child. Sup.R. 48. Sup.R. 48.03(D) lists, inter alia, the general responsibilities and duties of a GAL. Similarly, Sup.R. 48.06 provides general report requirements for a GAL's report along with more specific instructions if the report is generated in allocation of parental rights and responsibilities cases or in abuse, neglect, dependency, unruly, and delinquency reports. The general reporting requirements for a GAL's report state:

> (1) A guardian ad litem shall prepare a written final report, including recommendations to the court, within the times set forth in this division. The report shall affirmatively state that responsibilities have been met and shall detail the activities performed, hearings attended, persons interviewed, documents reviewed, experts consulted, and all other relevant information considered by the guardian ad litem in reaching the recommendations and in accomplishing the duties required by statute, by court rule, and in the order of appointment from the court.
>
> (2) All reports shall include the following warning: "The guardian ad litem report shall be provided to the court, unrepresented parties, and legal counsel. Any other disclosure of the report must be approved in advance by the court. Unauthorized disclosure or distribution of the report may be subject to court action, including the penalties for contempt, which include fine and/or incarceration."
>
> (3) Oral and written reports shall address relevant issues, but shall not be considered determinative.
>
> (4) A guardian ad litem shall be available to testify at any relevant hearing and may orally supplement the report at the conclusion of the hearing.
>
> (5) A guardian ad litem may provide an interim written or oral report at any time.

Sup.R. 48.06(A).

{¶26} Rules of Superintendence do not have the same force as statute or case law, but are rather purely internal housekeeping rules which do not create substantive rights in

individuals or procedural law. *In re J.S.*, 12th Dist. Butler Nos. CA2016-07-141 and CA2016-07-142, 2016-Ohio-7833, ¶ 12. Therefore, noncompliance with such a rule is generally not grounds for reversal. *In re B.J.*, 12th Dist. Warren Nos. CA2016-05-036 and CA2016-05-038, 2016-Ohio-7440, ¶ 57.

**{¶27}** Father argues that the GAL failed to satisfy her duties and responsibilities as the GAL because she did not interview Father's current spouse, Father's other child, Mother's fiancé, or Mother's other child. Father also argues that the GAL's report was deficient because it does not indicate whether any school or medical records were reviewed. He also takes issue with the brevity of the report and notes that the GAL included interviews with two individuals whose names did not appear in the report.[5]

**{¶28}** Following review of the record, we find the juvenile court did not err by permitting the GAL to testify or by accepting her written report. As noted above, noncompliance with the Rules of Superintendence is generally not grounds for reversal. In this case, the report stated that the GAL met with Father at her office on two separate occasions and conducted a home visit while C.A. was in Father's care. The GAL noted that during the home visit, Father's other son and his current wife were present. The GAL report then notes that she also met with Mother in her home while C.A. was in her care and that Mother's other daughter was present as well. After briefly summarizing other work she had done on the case, the GAL recommended that Mother be named as the residential parent.

**{¶29}** Although we agree that the GAL report is brief, we find there was no reason to exclude her report or to prevent her from testifying in this matter. The record reflects that the GAL did conduct an investigation into the best interests of C.A. The GAL was also

---

5. We fully agree that a GAL's duties and responsibilities are not to be taken lightly. Trial courts must monitor the performance of GALs to ensure the quality of their opinions and reports. GALs who do not appreciate the seriousness of their roles or possess the time necessary to fulfill their responsibilities must not be permitted to act on behalf of the court. *See In re E.H.,* 12th Dist. Preble No. CA2021-11-015, 2022-Ohio-1275.

subject to cross-examination on both her report and investigation, including who she interviewed and who she did not interview.  While Father wondered why the GAL did not interview more individuals in connection with her investigation, Father does not address any facts that would impact the outcome of these proceedings.  The juvenile court must decide the weight to be attributed to a GAL's testimony and report.

{¶30}  Finally, the record reflects that the juvenile court had ample justification for awarding Mother custody in this case.  Although the parties had initially worked well in a shared parting arrangement, the evidence showed that it was no longer possible due to substantial disagreements between the parties.  The GAL was but one witness in this case where both Mother and Father were able to testify and present their reasons why they should be awarded custody.  The juvenile court was not required to reject the GAL's testimony or rule her report inadmissible.  Instead, the record reflects the juvenile court considered the GAL's recommendation and weighed it in accordance with the other evidence admitted during the final hearing.  Accordingly, we find Father's second assignment of error is without merit.

{¶31}  Assignment of Error No. 3:

{¶32}  THE COURT ERRED IN ATTRIBUTING SOCIAL SECUIRTY DISABILITY BENEFIT PAYMENTS PAYABLE TO THE CHILD AS AN INCLUSION INTO MOTHER'S INCOME INSTEAD OF AS [sic] OFFSET AND CREDIT TO THE AMOUNT OF SUPPORT CALCULATED.

{¶33}  In his third assignment of error, Father argues the juvenile court erred in its computation of support.  As relevant here, the juvenile court's decision states that "social security and/or military benefits received by [Father] on behalf of [C.A.] be redirected to [Mother]."

{¶34}  Both Mother and Father agree that remand is appropriate and cite to R.C.

3119.05(O), which provides:

> Any non-means tested benefit received by the child or children subject to the order resulting from the claims of either parent shall be deducted from that parent's annual child support obligation after all other adjustments have been made. If that non-means tested benefit exceeds the child support obligation of the parent from whose claim the benefit is realized, the child support obligation for that parent shall be zero.

{¶35} Mother concedes that this court should remand this case for the purpose of determining the benefit C.A. receives and whether recalculation of child support is necessary based upon those figures. Accordingly, since this issue is conceded, Father's third assignment of error is sustained.

{¶36} Judgment affirmed in part, reversed in part, and remanded.

HENDRICKSON and BYRNE, JJ., concur.