[Cite as *In re A.C.F.*, 2023-Ohio-3296.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| A.C.F. | : | CASE NO. CA2023-03-022 |
| | : | O P I N I O N<br>9/18/2023 |
| | : | |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 19-C000093

Waite, Tomb & Eberly, LLP, and Jeremy M. Tomb, for appellant.

Rebecca Barthelemy-Smith, for appellee.

Aaron Aldridge, guardian ad litem.

**S. POWELL, P.J.**

{¶ 1} Appellant, Joshua A. Flippin ("Father"), appeals the decision of the Warren County Court of Common Pleas, Juvenile Division, continuing the shared parenting plan he entered into with appellee, Ashleigh N. Gray ("Mother"), regarding their son, A.C.F. Father also appeals the juvenile court's decision denying his motion to modify the terms of that

shared parenting plan by designating him, rather than Mother, as A.C.F.'s residential parent for school purposes. For the reasons outlined below, we affirm the juvenile court's decision.

**Facts and Procedural History**

{¶ 2} The case involves the parties' parental rights and responsibilities regarding their now ten-year-old, non-verbal, autistic son, A.C.F.[1] On August 3, 2021, the juvenile court issued an entry upholding a magistrate's decision approving and adopting a shared parenting plan for the parties. This plan designated Mother as A.C.F.'s residential parent for school purposes.

{¶ 3} On November 1, 2021, Father filed a motion requesting the juvenile court terminate the shared parenting plan and name Father as sole custodian of A.C.F. Alternatively, Father requested the juvenile court to modify the shared parenting plan by designating him, rather than Mother, as A.C.F.'s residential parent for school purposes. The matter ultimately proceeded to a two-day hearing held on August 3 and 4, 2022. During this hearing, a magistrate heard from a multitude of witnesses. This includes testimony from both Father and Mother, as well as from Father's new wife and Mother's fiancé. This also included testimony from A.C.F.'s guardian ad litem.

{¶ 4} On August 12, 2022, the magistrate issued a detailed, 17-page decision denying Father's requested relief. In so doing, the magistrate found it in A.C.F.'s best interest to continue the parties' shared parenting plan. The magistrate also found it in A.C.F.'s best interest to retain Mother as A.C.F.'s residential parent for school purposes. The magistrate determined that this would hold true so long as A.C.F. remained in the same school district where he was then currently enrolled. In reaching these decisions, the magistrate addressed each of the best interest factors set forth under R.C.

---

1. A.C.F. was born on March 19, 2013.

- 2 -

3109.04(F)(1)(a)-(j) and (F)(2), as well as the factors enumerated in R.C. 3119.23, and found:

> The Court continues to believe it is in [A.C.F.'s] best interest for each of his parents to be [A.C.F.'s] custodian when he is in their care. The Court believes a shared parenting arrangement helps preserve the positive loving relationship each parent has had with [A.C.F.] since birth. The Court aligns with the GAL's belief that the shared parenting plan should continue.

The magistrate also found "[t]here was no gross mishandling of [A.C.F.'s] education by Mother," and that both Father and Mother agreed that A.C.F. was "doing well" in his current school.

{¶ 5} On August 26, 2022, Father, appearing pro se, filed a variety of objections to the magistrate's decision. Father later supplemented his objections to the magistrate's decision on November 23, 2022.[2] Several months later, on February 2, 2023, the juvenile court issued a decision overruling Father's objections to the magistrate's decision in their entirety. In so holding, the juvenile court stated:

> In the independent review of the objections in the instant case, this Court has examined the pleadings in the file, the magistrate's decision, and reviewed the transcript of the hearing before the Magistrate. Taking all of the evidence into consideration, the Court finds the Magistrate properly determined the facts and appropriately applied the law, and that the Magistrate's decision was in the child's best interest. The Court determines that there is no error of law or other defect contained in the Magistrate's Decision of August 12, 2022.

{¶ 6} On February 7, 2023, Father filed a pro se motion requesting the juvenile court vacate its decision overruling his objections and instead "resume complete independent review" of the magistrate's decision. Father based his motion primarily on his belief that it should have taken the juvenile court longer to issue its decision after Mother filed her

---

2. Father's objections to the magistrate's decision are extensive and span a total of approximately 40 single-spaced pages.

responsive brief given the complexity of the case. To support this argument, Father claimed that because it did not take the juvenile court as long as he thought it should to issue its decision, that "reflects a high likelihood of error occurred at some level."

{¶ 7} On February 16, 2023, the juvenile court issued a decision overruling Father's motion. As part of that decision, the juvenile court explained:

> The basic underpinning of Father's motion is that the Court did not have sufficient time to conduct an independent review. This is based on the volume of information set forth in the transcript, the numerous pleadings filed in this case, and the paucity of time Father alleges between Mother's responsive pleading and the Judgment Entry disposing of objections. While his concern might otherwise be understandable, Father's motion presumes the Court would not endeavor to begin its review of the objected matters in advance of the filing of Mother's responsive pleading. Father's presumption is incorrect, however.

{¶ 8} This is in addition to the juvenile court explaining:

> This Court has gone to extraordinary lengths to consider the matters before it. The magistrate who heard the matter was no less attentive. * * * The Magistrate's Decision in this matter is seventeen pages in length. Within the four corners of those seventeen pages, the Magistrate sets forth extensive findings of fact, cites relevant and applicable law and, with due consideration applying the law to the facts, recommended a decision that the magistrate determined to be in the best interest of the Minor Child of the parties.

{¶ 9} On March 1, 2023, Father, now represented by counsel, filed a notice of appeal from the juvenile court's February 2, 2023 decision. Father then filed his appellate brief on April 3, 2023, with Mother filing her answer brief approximately two months later, on June 5, 2023. Father's appeal now properly before this court for decision, Father has raised the following single assignment of error for review.

**Father's Single Assignment of Error**

{¶ 10} THE TRIAL COURT ABUSED ITS DISCRETION IN APPLYING THE R.C. 3901.04 FACTORS IN DETERMINING THE BEST INTERESTS OF THE CHILD.

**{¶ 11}** In his single assignment of error, Father argues the juvenile court erred by finding it was in A.C.F.'s best interest to continue his and Mother's shared parenting plan. Father also argues the trial court erred by finding it was in A.C.F.'s best interest to retain Mother as A.C.F.'s residential parent for school purposes. Upon review, however, we find no merit to either of Father's claims.

*Abuse of Discretion Standard of Review*

**{¶ 12}** "A trial court has broad discretion to modify a shared parenting agreement, or to terminate it altogether." *Tener v. Tener-Tucker*, 12th Dist. Warren No. CA2004-05-061, 2005-Ohio-3892, ¶ 18, citing *Dobran v. Dobran*, 7th Dist. Mahoning No. 02 CA 14, 2003-Ohio-1605, ¶ 14. "A trial court's decision regarding the modification or termination of a shared parenting agreement may be reversed only when the trial court abuses that discretion." *Ross v. Ross*, 12th Dist. Preble No. CA2004-07-009, 2005-Ohio-2922, ¶ 14, citing *Donovan v. Donovan*, 110 Ohio App.3d 615, 618 (12th Dist.1996). "An abuse of discretion is more than an error of law or judgment, it implies that the attitude of the court is unreasonable, arbitrary, or unconscionable." *In re F.S.*, 12th Dist. Fayette Nos. CA2020-08-011 and CA2020-08-012, 2021-Ohio-345, ¶ 42, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable. *In re L.W.*, 12th Dist. Preble No. CA2020-12-019, 2021-Ohio-2461, ¶ 21. "A decision is unreasonable where it is not supported by a sound reasoning process." *In re L.M.*, 12th Dist. Preble Nos. CA2020-12-017 and CA2020-12-018, 2021-Ohio-1630, ¶ 22.

*Father's Motion to Terminate the Shared Parenting Plan*

**{¶ 13}** Father initially argues the juvenile court erred by finding it was in A.C.F.'s best interest to continue his and Mother's shared parenting plan. Father claims the juvenile court should have instead terminated their shared parenting plan and named him as A.C.F.'s sole

custodian. Father argues the juvenile court's failure to do so constitutes an abuse of discretion. We disagree.

{¶ 14} Pursuant to R.C. 3109.04(E)(2)(c), "in order to terminate a shared parenting plan, the juvenile court need only find that terminating the shared parenting plan is in the child's best interest." *Hatfield v. Cornell*, 12th Dist. Fayette No. CA2017-05-011, 2018-Ohio-798, ¶ 17, fn.2. The juvenile court makes this determination by "considering and balancing of the factors set forth in R.C. 3109.04(F)(1) and (F)(2)." *Ackley v. Haney*, 12th Dist. Fayette No. CA2021-07-017, 2022-Ohio-2382, ¶ 14. R.C. 3109.04(F)(2) also instructs the juvenile court to consider the factors set forth in R.C. 3119.23. *See Clyburn v. Gregg*, 4th Dist. Ross No. 11CA3211, 2011-Ohio-5239, ¶ 26. These factors include, but are not limited to, the wishes of the child's parents regarding the child's care; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; and the parent more likely to honor and facilitate court-approved parenting time rights. R.C. 3109.04(F)(1)(a), (c), (f). These factors also include the ability of the parents to cooperate and make decisions jointly with respect to the child; the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; and the recommendation of the child's guardian ad litem. R.C. 3109.04(F)(2)(a), (b), (e). This is in addition to any special and unusual needs of the child arising from the child's physical or psychological condition. R.C. 3119.23(A).

{¶ 15} Father argues it was an abuse of discretion for the juvenile court to continue the shared parenting plan and not name him as A.C.F.'s sole custodian. This is because, according to Father, "the child has a meltdown," "gets upset and anxious each time he sees his Mother," "resists going to Mother's house," and has "returned from his Mother's house with a black eye and bruises," none of which Father claims occurs when A.C.F. is with him. This is also because A.C.F. has a good relationship with his paternal grandmother, Glenda,

with whom Father and A.C.F. spend holidays and at whose house A.C.F. has his own toys and bedroom. Father argues this is contrary to A.C.F.'s relationship with Mother's new fiancé, a man Father claims A.C.F. does not like, "while she was still living with Father." Father further notes his belief that Mother moved A.C.F. into a new school district "for her own personal and selfish reasons," which have "created excessive burdens resulting in increased anxiety for the child to his detriment." This is in addition to Father claiming, among other things, that "Mother has not demonstrated competence in getting the appropriate help for child or cooperation to support continuity of care," which "indicates Mother doesn't understand the unique and complex needs of her child."

{¶ 16} The juvenile court disagreed with Father's characterizations, and so do we. The record instead indicates, just as the juvenile court found, that A.C.F. has a "positive relationship" with both Father and Mother, that both Father and Mother were "dedicated to improving [A.C.F.'s] abilities and independence," and, although there were times when both Father and Mother had deviated from their respective parenting time schedules without the other's approval, both Father and Mother "exchange [A.C.F.] frequently without issue." The record also fully supports the following findings made by the juvenile court:

> [A.C.F.] has two capable invested loving parents. [A.C.F.] is accustomed to living in both their homes. [A.C.F.'s] routine already involves spending time with both sides of his family. The [guardian ad litem] did not observe [A.C.F.] being nervous in Mother's care. There is no substantive proof that Mother causes [A.C.F.] anxiety or that her home is chaotic in a way that is preventing [A.C.F.] from progressing. Nor is there any proof that [A.C.F.'s] abilities would improve or that he would start talking if Mother, or [her fiancé and their two year old daughter,] were cut out of his life. Father does not believe [A.C.F.] likes transitions, but he is proposing a dramatic shift in his schedule. Father and [his new wife's] parenting time request shows a blatant disregard for [A.C.F.'s] best interest * * *.

{¶ 17} Given these findings, all of which we again note are supported by the record, we can find no abuse of discretion in the juvenile court's decision to continue Father and

Mother's shared parenting plan. To hold otherwise would, as the juvenile court found, not be in A.C.F.'s best interest. Therefore, for these reasons, Father's first argument lacks merit.

*Father's Motion to Modify the Terms of the Shared Parenting Plan*

{¶ 18} Father next argues the juvenile court erred by finding it was in A.C.F.'s best interest to retain Mother as A.C.F.'s residential parent for school purposes. Father claims the juvenile court should have instead modified the terms of their shared parenting plan by designating him, rather than Mother, as A.C.F.'s residential parent for school purposes. Father argues the juvenile court's failure to do so constitutes an abuse of discretion. We again disagree.

{¶ 19} A modification involving the naming of a child's residential parent for school purposes is considered a change to the terms of the parties' shared parenting plan. *In re A.N.G.G.*, 12th Dist. Warren No. CA2018-08-084, 2019-Ohio-1294, ¶ 10, fn.2. Such a request is governed by R.C. 3109.04(E)(2)(b). *See In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 42 ("changing the residential parent for school purposes is a modification of a term of a shared parent plan, and therefore is governed by R.C. 3109.04[E][2][b] rather than R.C. 3109.04[E][1][a]"). "Pursuant to that statute, the court may modify the terms of the shared parenting plan if such modification is in the best interest of the children." *Leach v. Leach*, 12th Dist. Butler No. CA2019-06-092, 2020-Ohio-1181, ¶ 8. The juvenile court makes this determination by considering and analyzing the factors outlined in R.C. 3109.04(F)(1). *Mack v. Mack*, 12th Dist. Butler No. CA2018-09-179, 2019-Ohio-2379, ¶ 18. As noted above, these factors include, but are not limited to, the wishes of the child's parents regarding the child's care; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; and the parent more likely to honor and facilitate court-approved

- 8 -

parenting time rights. R.C. 3109.04(F)(1)(a), (c), (f).

{¶ 20} Father argues it was an abuse of discretion for the juvenile court to retain Mother as A.C.F.'s residential parent for school purposes because she "grossly mishandled the child's transition" from his prior school district to the school which he now attends. However, just as the juvenile court found, and with which we agree, the record firmly establishes that Mother was not "careless or ignorant of what was best for [A.C.F.] when selecting a school for him," nor was there any "gross mishandling of [A.C.F.'s] education by Mother." We instead agree with the juvenile court's finding "[t]he best treatment for [A.C.F.] may continue to evolve as more research is done," which unfortunately may result in "some trial and error to determine the right educational setting for [A.C.F.]"

{¶ 21} In so holding, we note that Father is clear in his steadfast belief that he should be designated as A.C.F.'s residential parent for school purposes rather than Mother. However, "[w]hile a parent's wishes about the care and control of his or her children must be considered by the court, 'the parent's wishes should not be placed before a child's best interest.'" (Internal brackets omitted.) *Hall v. Hall*, 12th Dist. Butler No. CA2018-05-091, 2019-Ohio-81, ¶ 22, quoting *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 44. To do otherwise, particularly under the facts of this case, would not be in A.C.F.'s best interest. Therefore, Father's second argument also lacks merit.

## Conclusion

{¶ 22} For the reasons outlined above, and finding no merit to either of Father's two arguments raised herein, Father's single assignment of error lacks merit and is overruled. Father's appeal is accordingly denied.

{¶ 23} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.