[Cite as *In re D.M.B.-M.*, 2024-Ohio-675.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: D.M.B-M. | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| and | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| IN THE MATTER OF: D.L.B-M. | : | |
| | : | |
| | : | Case Nos. 2023 CA 00080 |
| | : | 2023 CA 00081 |
| | : | |
| | : | O P I N I O N |
| | : | |

CHARACTER OF PROCEEDING:    Appeal from the Licking County
Court of Common Pleas, Probate
Division, Case Nos. 2022-5073 and
2022-5074

JUDGMENT:    Affirmed

DATE OF JUDGMENT:    February 22, 2024

APPEARANCES:

For Plaintiff-Appellant M.B.

JERMAINE L. COLQUITT
33 W. Main St. Suite 109
Newark, Ohio 43055

For Defendant-Appellees T.M. & M.M.

W. SCOTT HAYES
195 E. Broad Street
Pataskala, Ohio  43062

ALLISON MACLEOD-OWEN
Guardian ad Litem
110 E. Elm Street Suite B
Granville, Ohio 43023

*Baldwin, J.*

{¶1} The appellant appeals the decision of the Licking County Court of Common Pleas, Probate Division, which granted the appellees' petition for adoption of the appellant's minor children, D.M.B-M. and D.L.B-M.

### STATEMENT OF THE FACTS AND THE CASE

{¶2} The appellant is the biological mother of minor children D.M.B-M. and D.L.B-M., who were removed from her care in 2014. Initially they lived with their maternal grandmother, M.T. The appellant has four other children, who are not the subject of this case, who were also living with MT. Six children were too much for M.T., and D.M.B-M. and D.L.B-M were subsequently placed with the appellees. This appeal deals only with D.M.B-M. and D.L.B-M (hereinafter "the children".)

{¶3} The appellees were awarded legal custody of the children on December 1, 2015, and the children have been in their custody and care since that time. On July 18, 2022, the appellees filed a petition for adoption of the children.

{¶4} Prior to the appellees' petition for adoption, the children regularly visited M.T. and their siblings. However, after the petition was filed M.T. and the children's siblings began to be cruel to the children and harass the appellees. M.T. threatened to continue her harassment of the appellees until they withdrew the petition. A Guardian ad Litem ("GAL") was appointed for the children.

{¶5} The GAL determined that despite M.T.'s harassment, the appellees provided a stable, consistent, and loving presence for the children. The children were enrolled in school and learning well, and were involved in extracurricular activities. In addition, the appellees kept up with the children's medical and therapy appointments.

**{¶6}** The GAL determined further that the children were comfortable and happy in the appellees' home. The children had bonded with appellees, and had communicated to the GAL that they were excited to be adopted by the appellees. The GAL opined that adoption was the natural progression towards providing stability in the children's lives.

**{¶7}** The appellees have raised the children for most of their lives. The children have medical conditions, and the appellees keep up with their appointments and manage their health care. Their overall health is described as good.

**{¶8}** The appellant struggles with addiction from the use of illicit drugs.

**{¶9}** Appellee T.M. pleaded guilty to a charge of disorderly conduct arising from an incident in which, while at the police station to be fingerprinted in connection with his petition for adoption, he took D.M.B-M.'s face in his hand in order to make the child look at him after he had asked D.M.B-M. to stop making noise in the lobby. The incident left a small scratch on the child's chin from T.M.'s fingernail. The children's maternal grandmother, M.T., called the police and alleged that T.M. choked the child, resulting in domestic violence and assault charges. The GAL, who had been appointed at the appellees' request following the charges, investigated the allegations and advised the trial court that she had no concerns that the children were in any danger from appellee T.M.

**{¶10}** On February 9, 2023, the trial court conducted a full bifurcated evidentiary hearing on the petition for adoption. The trial court heard testimony from the appellant, the appellees, the children's oldest biological sibling, the children's grandmother M.T., and the GAL. In addition, the trial court conducted in camera interviews with the children. Further, because D.M.B-M. was at the age at which his consent to the adoption was required, the trial court briefly spoke with him on the record. D.M.B-M. told the court that

he was excited about being adopted by the appellees, that his adoption by the appellees was "something he would like to have happen," and provided the trial court with his consent.

{¶11} The trial court considered the evidence presented, and granted the appellees' petition. The appellant appealed, and on July 25, 2023 this Court reversed and remanded the matter to the trial court "to sufficiently indicate whether or not the trial court considered all the factors in R.C. 3107.161(B) and explain their application to this case." *In the Matter of D.M.B-M.,* 5th Dist. Licking Nos. 2023 CA 00014, 2023 CA 00015, 2023-Ohio-2560, ¶21.

{¶12} On October 31, 2023, the trial court issued a Judgment Entry in which it discussed in detail how each factor set forth in R.C. 3107.161(B) applied to this case, and again granted the appellees' petition for adoption.

{¶13} The appellant filed a timely appeal, and sets forth the following sole assignment of error:

{¶14} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT THE ADOPTION OF D.L.B. AND D.M.B. WAS IN THE CHILDREN'S BEST INTEREST BECAUSE THIS FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. R. at 80."

### STANDARD OF REVIEW

{¶15} A probate court's decision to grant or deny an adoption petition is reviewed under an abuse-of-discretion standard. *In Re Adoption of Ridenour,* 61 Ohio St.3d 319, 320, 574 N.E.2d 1055 (1991). An abuse of discretion is more than an error of law or judgment, it is a decision that is unreasonable, arbitrary, or unconscionable. *In re*

*Adoption of A.L.S.*, 12th Dist. Butler No. CA2017-09-146, 106 N.E.3d 69, 2018-Ohio-507, ¶ 16. "[T]he vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable." *Effective Shareholder Solutions v. Natl. City Bank*, 1st Dist. Hamilton Nos. C-080451 and Hamilton Nos. C-090117, 2009-Ohio-6200, ¶ 9. A decision is unreasonable where it is not supported by a sound reasoning process. *Id.*

## ANALYSIS

**{¶16}** The appellant does not dispute that her consent to the adoption was unnecessary due to her failure to have de minimis contact with the children or provide support for them for within the one year prior to the filing of the petition for adoption. Thus, the only issue in the case sub judice is whether the trial court abused its discretion when it found that the appellees' adoption of the children was in their best interest. We find that it did not.

**{¶17}** This Court discussed best interest analysis in the context of adoption in the case of *In re Adoption of Kat. P.*, Fairfield Nos. 10CA16 and 10CA17, 2010-Ohio-3623, stating:

> An appellate court will not disturb a trial court's decision on adoption
> unless it is against the manifest weight of the evidence. *In re Adoption of*
> *Masa* (1986), 23 Ohio St.3d 163, 492 N.E.2d 140. A judgment supported by
> some competent, credible evidence will not be reversed by a reviewing
> court as against the manifest weight of the evidence. *C.E. Morris Co. v.*
> *Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. A
> reviewing court must not substitute its judgment for that of the trial court

where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson*, 66 Ohio St.3d 610, 614 N.E.2d 742, 1993–Ohio–9.

*Id.* at ¶ 8.

**{¶18}** R.C. 3107.161 sets forth the factors a trial court must consider when making a best interest determination in a contested adoption, and states:

(A)     As used in this section, "the least detrimental available alternative" means the alternative that would have the least long-term negative impact on the child.

(B)     When a court makes a determination in a contested adoption concerning the best interest of a child, the court shall consider all relevant factors including, but not limited to, all of the following:

(1)     The least detrimental available alternative for safeguarding the child's growth and development;

(2)     The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3)     The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4)     The duration of the separation of the child from a parent;

(5)     Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the

child's current placement, the likelihood of future placements, and the results of prior placements;

(6)     The likelihood of safe reunification with a parent within a reasonable period of time;

(7)     The importance of providing permanency, stability, and continuity of relationships for the child;

(8)     The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9)     The child's adjustment to the child's current home, school, and community;

(10)    The mental and physical health of all persons involved in the situation;

(11)    Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected; whether the person, in a case in which a child has been adjudicated to be an abused or neglected child, has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether the person has been convicted of, pleaded guilty to, or accused of a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the person's family or household; and whether the person has been convicted of, pleaded guilty to, or accused of any

offense involving a victim who at the time of the commission of the offense was a member of the person's family or household and caused physical harm to the victim in the commission of the offense.

(C)     A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative.

{¶19} During the best interest portion of the February 9, 2023 hearing, the trial court heard testimony from the appellant, the appellees, one of the children's siblings, the children's grandmother M.T., and the GAL. In addition, the trial court questioned D.M.B-M. on the record regarding his consent to the adoption, and conducted in camera interview with both of the children. In rendering its October 31, 2023 decision, the trial court considered the sworn testimony and exhibits entered into the record during the February 9, 2023 hearing, the documentary evidence contained in its file, the substance of the in camera interviews with the children, and the report and recommendation of the GAL.

{¶20} The trial court separately considered and applied each of the eleven factors set forth in R.C. 3107.161(B) to the facts of this case, and with regard to each found as follows:

**R.C. 3107.161(B)(1).** The trial court determined that the appellees were the least detrimental available alternative for safeguarding the children's growth and development, particularly in light of the actions of the birth family towards the children after the filing of the appellees' petition. In addition, the

children told the GAL that they were very excited to be adopted by the appellees, the appellees provided safe and suitable housing for the children with adequate space, and the children were thriving in their current home with the appellees.

**R.C. 3107.161(B)(2).** The trial court determined that the age and health of the children at the time of the best interest determination, and at the time the children were removed from the home, supported granting the appellees' petition for adoption. The children were first removed from their birth parents' home when they were 4 and 2, had been in the appellees' care since they were 5 and 3, were 12 and 10 years old at the time of the hearing, and were thriving in the appellees' home.

**R.C. 3107.161(B)(3).** The children made their wishes known to the trial court during its in camera interview with each of them, after which the trial court found that the age and maturity of the children was such that it could give their desire to be adopted by the appellees significant weight. Further, D.M.B-M was at the age at which his consent to the adoption was required, and his consent to the adoption was executed in the presence of the trial court.

**R.C. 3107.161(B)(4).** The trial court determined that the children had not been in the care of their birth parents since the ages of 4 and 2, had been separated from their birth parents for eight years prior to the trial court's consideration of the July 18, 2022 petition for adoption, and had been placed with the appellees since 2015.

**R.C. 3107.161(B)(5).** The trial court determined that the children had bonded with the appellees, and had been thriving with them since 2015, rendering further placement unlikely. In addition, prior placements with other birth relatives had been unsuccessful.

**R.C. 3107.161(B)(6).** The trial court determined that it was very unlikely that the children could be safely reunited with their birth parents at any time, let alone within a reasonable amount of time. Their birth father's whereabouts were unknown and he had an extensive criminal record; and, the appellant testified that she was not in a position to care for the children.

**R.C. 3107.161(B)(7).** The trial court determined that providing the children with permanency and stability now, and ensuring continuation of the relationship developed with the appellees, was immensely important.

**R.C. 3107.161(B)(8).** The trial court noted that the children's interaction and interrelationship with their parents, siblings, and grandmother had affected them negatively, and continued to cause them upset even at the time of the evidentiary hearing. In contrast, the children's relationship with each other and with the appellees significantly impacted them in a positive manner.

**R.C. 3107.161(B)(9).** The trial court determined that the children had been placed in the appellees' home for most of their lives, were enrolled in school, and participated in extra-curricular activities. The appellees' home was located in a friendly and safe community, and provided the children with a sense of belonging.

**R.C. 3107.161(B)(10).** The trial court determined that the mental and physical health of all persons involved supported the appellees' adoption of the children. The appellant has a history of struggling with substance use disorder. The birth father's mental and physical health was unknown. Neither of the appellees suffer from a mental or physical health condition that prevent them from providing care for the children long term. D.L.B-M. has an IEP at school and was being tested for dyslexia and other learning disabilities, was being treated for migraines, and has a birth defect related to her heart that was being monitored by doctors. D.M.B-M. was receiving counseling due to the upset caused by the children's birth family. The children were otherwise healthy and were receiving appropriate medical care while in the appellees' care.

**R.C. 3107.161(B)(11).** Finally, the trial court determined that while appellee T.M. had been charged with domestic violence and assault, and pleaded guilty to disorderly conduct in connection with an interaction he had with D.M.B-M., the videotaped evidence, the witnesses - including D.M.B-M. himself, and the GAL all confirmed that the incident was isolated and relatively minor. Appellee T.M. complied with the requirements of the plea agreement. The GAL had no concerns regarding the children's wellbeing while in the appellees' care, and recommended that the adoptions be granted. The trial court considered all of the evidence presented regarding the event, and found that the children were safe and well-cared for in the appellees' household.

**{¶21}** The trial court heard the evidence, and was in the best position to ascertain the veracity of the witnesses, including the children when interviewed in camera. Based upon the trial court's detailed application of the R.C. 3107.161(B) factors, it found that granting the appellees' petitions for adoption of the minor children was in their best interest. Given the testimony and evidence presented, we cannot find any abuse of discretion by the trial court in finding that the best interests of the children are best served through adoption by the appellees. The factors set forth in R.C. 3107.161(B), which were thoroughly discussed by the trial court in its October 31, 2023 Judgment Entry, overwhelmingly favor appellees' adoption of the children.

## CONCLUSION

**{¶22}** Based upon the foregoing, we find that the trial court did not abuse its discretion when it granted the appellees' petitions for adoption of D.M.B-M. and D.L.B-M. Accordingly, the appellant's sole assignment of error is overruled, and the decision of the Licking County Court of Common Pleas, Probate Division is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Hoffman, J. concur.