[Cite as *Suwareh v. Nwankwo*, 2026-Ohio-2225.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| LAMIN SUWAREH, | : | |
| Appellee, | : | CASE NO. CA2025-09-106 |
| vs. | : | OPINION AND JUDGMENT ENTRY 6/15/2026 |
| CHINELO NWANKWO, | : | |
| Appellant. | : | |
| | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR14080831


Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for appellee.

Chinelo Nwankwo, pro se.


# **O P I N I O N**

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Chinelo Nwankwo ("Mother"), appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, that terminated a shared parenting plan, made appellee, Lamin Suwareh ("Father"), the sole residential

parent and custodian of the parties' two minor children, and found her in contempt for failing to abide by prior parenting orders. For the reasons set forth below, we affirm the trial court's decision.

## I. FACTS & PROCEDURAL HISTORY

{¶ 2} The parties were divorced in 2015 and share two minor children. The final decree of divorce incorporated and adopted an agreed upon shared parenting plan, which provided that while both parties were the residential parent and legal custodian of the children, Mother's residence was the children's primary residence. At that time, Mother and Father lived within 15 minutes of one another, and Father was awarded substantial parenting time with the children.

{¶ 3} In the years that followed their divorce, the parties brought numerous post-decree motions concerning child support obligations, Mother's relocation to the Columbus, Ohio area, modifications to parenting time, and efforts to hold one another in contempt. The shared parenting plan was modified a number of times to address transportation arrangements, telephone contact, and holiday visitation.

{¶ 4} On January 23, 2024, Father filed a flurry of motions with the trial court. As relevant to the present appeal, Father filed a motion seeking to hold Mother in contempt for violating, among other things, orders relating to parenting time and transportation. Father moved to recover attorney fees and costs associated with the contempt motion. Father further sought the reallocation of parental rights and responsibilities and sought to modify the shared parenting plan so that he would be the named residential parent of the children.

{¶ 5} A hearing on Father's pending motions was held before a magistrate on March 4, 2024. Mother, Father, Father's wife, and Father's brother all testified. Various documentary evidence was accepted and admitted into evidence by the magistrate. On

March 11, 2024, the magistrate conducted an in camera interview of the parties' two children, who were, respectively, nine and ten years old at the time.

{¶ 6} On November 27, 2024, the magistrate issued a decision in which it granted Father's motion to modify parental rights and responsibilities, terminated the parties' shared parenting plan, designated Father as the children's residential parent and legal custodian, and found Mother in contempt for failing to abide by court orders relating to Father's parenting time with the children. Regarding parental rights and responsibilities, the magistrate observed that the parties' shared parenting plan had been jointly agreed to by the parties and adopted by the court pursuant to R.C. 3109.04(D)(1)(a)(i), which made it subject to termination upon the request of either parent or upon the court determining that shared parenting was not in the best interest of the children, as provided in R.C. 3109.04(E)(2)(c). Following its consideration of the best interest factors set forth in R.C. 3109.04(F)(1) and (2), the magistrate determined shared parenting was not in the children's best interests and it terminated the shared parenting plan and designated Father the children's residential parent and legal custodian. In doing so, the magistrate noted the parties were unable to effectively communicate with one another, each parent made unilateral decisions regarding the children in contravention of court orders, the parties distrust one another, they do not act in the children's best interests, and the parties have "created a high conflict and put the minor children in the middle." The magistrate ordered that Mother be granted visitation with the children on an every-other-week schedule during the summer when school was not in session, and during the school year, on the third weekend of the month. Each party was responsible for providing transportation at the start of his or her parenting time.

{¶ 7} As for Father's contempt motion, the magistrate noted that the last time Father was able to exercise parenting time with his children was on November 17, 2023.

- 3 -

Other attempts by Father to exercise his court-ordered parenting time were denied by Mother. Mother had previously been found in contempt for denying Father court-ordered parenting time with the children. The magistrate determined that Father had presented clear and convincing evidence of Mother's failure to comply with the court's orders granting Father parenting time and that Mother had failed to present evidence that she was unable to comply with those orders. The magistrate therefore found Mother in contempt, sentenced her to 30 days in jail, and provided that Mother could purge herself of contempt by paying Father $1,000 "no later than 30 days from when a final appealable order is issued" in order to defray his attorney fees and filing costs.

{¶ 8} On December 23, 2024, Mother filed untimely objections to the November 27, 2024 Magistrate's Decision. In her objections, Mother essentially challenged the magistrate's weighing of the best interest factors, contending the court ignored evidence and failed to consider several factors that supported keeping her the named residential parent and legal custodian of the children. Mother further challenged the magistrate's decision to find Father's testimony regarding Mother's efforts to hinder or prevent Father from exercising his parenting time with the children credible.

{¶ 9} On September 5, 2025, the trial court issued a decision overruling Mother's objections and adopting the Magistrate's Decision, subject to a few additional factual findings and a few modifications to the judgment. The court first noted that the objections were untimely but nonetheless addressed the objections after indicating that it had "review[ed] the record of the case, the Magistrate's Decision, and the 245 page transcript of the hearing before the Magistrate and the evidence presented before the Magistrate." After considering the best interest factors set forth in R.C. 3109.04(F)(1) and (2), the court agreed with the magistrate that terminating the shared parenting plan and making Father the residential parent and legal custodian was in the children's best interests. In making

- 4 -

this finding, the court indicated that since Mother moved to Columbus in 2017, the parties have not cooperated with one another, Mother has not "facilitated" Father's parenting time, and Mother has "blocked" Father's communication with the children. The court noted that Mother has been found in contempt for violating Father's parenting rights on three prior occasions: October 30, 2019, August 11, 2022, and September 29, 2023. The court further noted that the children appeared to have been "coached" on what to say during their in-camera interview with the magistrate and that the children's expressed wishes were "but one best interest factor to consider." The trial court found that "the children are quickly becoming alienated from their father. The court has run out of options due to [Mother's] refusal to honor [Father's] parenting rights. It is contrary to the children's best interest to be alienated from either parent." The court adopted the visitation schedule set forth by the magistrate but modified the transportation provision to provide that exchanges of the children should occur at a specific restaurant at a mall located between the parties' respective residences.

{¶ 10} As for the finding of contempt, the trial court adopted the magistrate's finding that Mother was in contempt of court for denying Father parenting time with the children, as "[t]he evidence was abundant that [Mother] continued to willfully disregard [Father's] parenting rights." Because Mother had previously been found in contempt for violating court orders providing parenting time to Father, the court found it appropriate to sentence Mother to 60 days in jail, consecutive to a 30-day jail sentence imposed for a prior contempt finding, and ordered her to pay $1,092.75 of Father's attorney fees. The court ordered that Mother could purge herself of contempt by "strictly comply[ing]" with court orders and paying the balance due on the current and prior contempt purge order.

{¶ 11} Mother appealed, raising six assignments of error for review.

## II. PRELIMINARY ISSUES

{¶ 12} Prior to addressing the merits of Mother's assignments of error, we must first address two matters that impact our review of the assigned errors. The first issue concerns Mother's failure to timely file objections to the magistrate's decision. The second issue involves Mother's failure to file a transcript of the March 4, 2024 hearing before the magistrate.

### A. Civ.R. 53 – Untimely Objections

{¶ 13} Civ.R. 53(D)(3)(b)(i) provides that a party may file written objections to a magistrate's decision within 14 days of the filing of the decision. "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(b)(iv).

{¶ 14} Mother did not object to the November 27, 2024 Magistrate's Decision until December 23, 2024—26 days after the magistrate's decision was filed. The objections were therefore untimely, and she has waived all but plain error on appeal.[1] *Mallikarjunaiah v. Shankar*, 2020-Ohio-4508, ¶ 22 (12th Dist.). "Plain error is only found in 'exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *Holden v. Holden*,

---

1. In her reply brief, Mother argues that her objections were timely filed as the objections were electronically submitted on December 11, 2024, which falls within the 14-day time requirement of Civ.R. 53. However, Mother's objections were submitted to the Case Management Office of the court, not filed with the clerk of courts. As Local Rule 1(F) of the Butler County Domestic Relations Court Rules of Procedure provide, "Submission to any section of the Case Management Office is not a filing of the legal action. All Domestic Relations Court filings must be done at the Clerk of Courts Office." Mother's submission of her objections to the Case Management Office on December 11, 2024 does not make the objections timely filed. *See Losekamp v. Losekamp*, 2014-Ohio-4422, ¶ 22-25 (12th Dist.). As Mother's objections were not filed with the clerk of courts until December 23, 2024, which is well outside the 14 days prescribed in Civ.R. 53(D)(3)(b)(i), our review of her assignments of error is limited to plain error.

2016-Ohio-5557, ¶ 25 (12th Dist.), quoting *Goldfuss v. Davidson*, 1997-Ohio-401, syllabus. Where a party fails to construct a plain error argument on appeal, an appellate court will not construct one for her. *Souare v. Summit Cty. Sheriff*, 2026-Ohio-1138, ¶ 15 (9th Dist.); *Ijakoli v. Alungbe*, 2024-Ohio-5287, ¶ 69 (1st Dist.); *State v. Oghojafor*, 2023-Ohio-44, ¶ 104 (12th Dist.).

### B. Transcript of Proceedings

{¶ 15} When ruling on Mother's untimely objections, the trial court indicated it had reviewed, among other things, "the 245 page transcript of the hearing before the Magistrate." However, the record does not contain a transcript of the March 4, 2024 hearing and there is no indication on the docket that a transcript of the March 4, 2024 hearing was ever requested by Mother or filed with the trial court. A transcript of the March 4, 2024 hearing was likewise not filed with this appellate court.[2]

{¶ 16} Pursuant to Civ.R. 53(D)(3)(b)(iii), "a party challenging the factual findings of a magistrate is required to provide the trial court with a transcript of the hearing before the magistrate to support the objections." *Hughes v. Lanham*, 2004-Ohio-7142, ¶ 43 (12th Dist.). Where a transcript or affidavit of evidence is not filed, "[the] trial court's independent review of the record is limited to an examination of the magistrate's conclusions of law and recommendations in light of any accompanying findings of fact." *Levy v. Seiber*, 2016-Ohio-68, ¶ 18 (12th Dist.); *Tipton v. Butler Cty. Dog. Warden*, 2025-Ohio-5361, ¶ 14 (12th Dist.). An appellate court's review of factual issues, in turn, is limited "to whether the trial

---

2. Even if a transcript of the March 4, 2024 hearing had been filed with this court, we would have been precluded from considering it as an appellate court is confined to the record created in the trial court. *See Jones v. Jones*, 2022-Ohio-1986, ¶ 15-16 (12th Dist.); *Tipton v. Butler Cty. Dog. Warden*, 2025-Ohio-5361, ¶ 15 (12th Dist.). "[W]hen a party fails to file a transcript or affidavit of evidence with the trial court, 'the appellate court is *precluded* from considering the transcript of the magistrate's hearing,' even if the party filed the transcript with the appellate court." (Emphasis in original.) *Id.*, quoting *Reyes v. Kiwewa*, 2024-Ohio-4524, ¶ 21 (12th Dist.).

court abused its discretion in applying the law to the magistrate's factual findings." *Id*.; *Levy* at ¶ 18.

{¶ 17} With these principles in mind, we turn to Mother's assignments of error.

### III. ANALYSIS

### A. Best Interest Considerations

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE TRIAL COURT ABUSED ITS DISCRETION IN DESIGNATING FATHER AS RESIDENTIAL PARENT AND TRANSFERRING THE CHILDREN TO FATHER'S SCHOOL DISTRICT BECAUSE ITS BEST INTEREST FINDINGS UNDER R.C. 3109.04(F)(1) ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND DISREGARD UNDISPUTED MEDICAL, SCHOOL, AND LAW-ENFORCEMENT CORROBORATIONS OF ESCALATING HARM.

{¶ 20} In her first assignment of error, Mother challenges the trial court's decision to name Father the residential parent and legal custodian upon terminating the parties' shared parenting plan. Mother contends this decision is against the manifest weight of the evidence presented at the March 4, 2024 hearing and against the weight of the evidence she presented in subsequent filings made after the court issued its September 5, 2025 decision overruling her objections to the magistrate's decision.

{¶ 21} "It is undisputed a juvenile court has discretion in custody matters, and its decision in such matters will not be reversed absent an abuse of that discretion." *Ackley v. Haney*, 2022-Ohio-2382, ¶ 13 (12th Dist.), citing *In re A.D.*, 2013-Ohio-1308, ¶ 15 (12th Dist.). An abuse of discretion implies that the juvenile court acted unreasonably, arbitrarily, or unconscionably. *Id*.

{¶ 22} Pursuant to R.C. 3109.04(E)(2)(c), a court may terminate a shared parenting decree upon request of one or both of the parents, or whenever it determines

that the shared parenting plan is not in the best interest of the child. The decision to terminate a shared parenting plan and to then award custody of the child to one parent over the other is determined by a consideration and balancing of the best interest factors set forth in R.C. 3109.04(F)(1) and (2). *Ackley* at ¶ 14.

{¶ 23} The best interest factors set forth in R.C. 3109.04(F)(1) include, but are not limited to: (1) the wishes of the parents; (2) the wishes and concerns of the child, as expressed to the court in chambers; (3) the child's interaction and interrelationship with his parents, siblings, and other persons who may significantly affect the child's best interest; (4) the child's adjustment to home, school, and community; (5) the mental and physical health of all persons involved; and (6) the likelihood that the caregiver would honor and facilitate visitation and parenting time. *Denier v. Carnes-Denier*, 2016-Ohio-4998, ¶ 14 (12th Dist.). Additional best interest factors set forth in R.C. 3109.04(F)(2) include (1) the ability of the parents to cooperate and make decisions jointly, with respect to the child; (2) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (3) any history or potential for abuse; (4) the geographic proximity of the parents to one another; (5) and the recommendation of the guardian ad litem, if the child has a guardian ad litem. R.C. 3109.04(F)(2)(a) thru (e); *Ackley* at ¶ 16.

{¶ 24} In addressing Mother's assignment of error, our review is limited to the record that existed at the time the trial court adopted the magistrate's decision. Mother's arguments and reliance on events that occurred *after* the trial court issued its September 5, 2025 decision are not properly before us. "'An appellate court is confined to the record created in the trial court.'" *In re Z.C.*, 2006-Ohio-1787, ¶ 21 (12th Dist.), quoting *Folck v. Henry*, 2004-Ohio-3772, ¶ 11 (2d Dist.). See also App.R. 9(A) (noting that the record on appeal consists of the "original papers and exhibits thereto filed in the trial court, the

transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court"). An appellate court cannot consider on appeal evidence which was not presented to the trial court at the time it entered its decision. *Schroeder v. Schroeder*, 2008-Ohio-3875, ¶ 8, fn. 3 (2d Dist.); *Jones v. Jones*, 2022-Ohio-1986, ¶ 16 (12th Dist.) (noting an appellate court is "precluded from considering evidence not before the court below").

{¶ 25} Having reviewed the record in the present case, we find that the juvenile court's decision to terminate the shared parenting plan and name Father as the residential parent and legal custodian of the children does not constitute an abuse of the trial court's discretion or rise to the level of plain error. The juvenile court considered the factors set forth in R.C. 3109.04(F)(1) and (2) and found that the shared parenting plan was no longer in the best interest of the parties' children. Though our review was limited by Mother's failure to file a transcript of the March 4, 2024 hearing, the findings made by the magistrate and adopted by the trial court support the court's determination that Mother and Father have a contentious relationship and are unable to cooperate and communicate with one another. The court found that the children do well when they are with Father, and they enjoy their relationship with Father and his side of the family when they are able to spend time together. Mother's actions have often interfered with Father's ability to exercise parenting time with the children, preventing him from exercising parenting time after November 11, 2023 and, at times, preventing him from having any communication with the children. Mother's actions were alienating the children from Father. As the trial court noted, it had "run out of options due to [Mother's] refusal to honor [Father's] parenting rights."

{¶ 26} Based on the record before us, and the trial court's proper application of the law to the magistrate's factual findings, we conclude that the trial court did not err in

terminating shared parenting and naming Father the residential parent and legal custodian of the children. Mother's first assignment of error is overruled.

**B. Independent Review of the Magistrate's Decision**

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT FAILED TO CONDUCT A PROPER DE NOVO REVIEW UNDER CIV.R. 53(D)(4)(d) OF THE MAGISTRATE'S DECISION AND ADOPTED MATERIAL CREDIBILITY FINDINGS AND FACTUAL CONCLUSIONS WITHOUT ADEQUATE ANALYSIS OR RECORD CITATION, WHILE SIMULTANEOUSLY ADDING INDEPENDENT FINDINGS ADVERSE TO [MOTHER].

{¶ 29} In her second assignment of error, Mother argues the trial court failed to conduct an independent review of the magistrate's November 27, 2024 decision following her objections to the decision, as required by Civ.R. 53(D)(4)(d). She further contends the record does not support that the trial court engaged in a "careful de novo analysis."

{¶ 30} Civ.R. 53(D)(4)(d) provides that if an objection to a magistrate's decision is "timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." However, where no timely objections were filed—as is the case here—the Rule provides that "the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c). "Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification." Civ.R. 53(D)(4)(b).

{¶ 31} The party claiming that the trial court failed to independently review a magistrate's decision, "bears the burden of affirmatively demonstrating the trial court's failure to perform its duty of independent analysis." *Pietrantano v. Pietrantano*, 2013-Ohio-

4330, ¶ 14 (12th Dist.). "Absent evidence to the contrary, [appellate] courts presume the trial court complied with its obligation under Civ.R. 53." *Motes v. Motes*, 2026-Ohio-307, ¶ 24 (12th Dist.).

{¶ 32} Contrary to Mother's assertions, the record reflects that the trial court independently reviewed the magistrate's decision. The trial court explicitly stated it had "review[ed] . . . the record of the case, the Magistrate's Decision, and the 245 page transcript of the hearing before the Magistrate, and the evidence presented before the Magistrate." The court then proceeded to not only modify the magistrate's decision as it related to the transportation provision and the penalty imposed on the contempt finding, but the court also added additional findings relevant to the best interest factors set forth in R.C. 3109.04(F)(1) and (2). Thus, the record demonstrates that the trial court independently reviewed the Magistrate's Decision. Mother's arguments are without merit and her second assignment of error is, therefore, overruled.

### C. Post-decision Events

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE COURT ERRED BY DISREGARDING CONTEMPORANEOUS HOSPITAL, POLICE, AND CPS RECORDS AND BY REFUSING TO INTEGRATE THOSE THIRD-PARTY CORROBORATIONS INTO THE BEST-INTEREST ANALYSIS, CONTRARY TO R.C. 3109.04(F)(1)(c) and (f).

{¶ 35} In her third assignment of error, Mother argues the trial court erred by failing to consider events that occurred "the month after" the trial court entered its September 5, 2025 decision making Father the residential parent and legal custodian. Mother references events and "sealed" exhibits that were filed in support of a motion to stay execution of the September 5, 2025 judgment.

{¶ 36} Mother's arguments are without merit. The trial court did not err by not considering evidence of events that occurred *after* it entered judgment on September 5, 2025. Evidence of events that occurred after September 5, 2025 are not at issue in this appeal and are outside the record. *Maleky v. Ohio State Univ., Office of Compliance & Integrity*, 2026-Ohio-890, ¶ 18 (10th Dist.). As we previously indicated, an appellate court cannot consider on appeal evidence which was not presented to the trial court at the time it entered its decision. *Schroeder*, 2008-Ohio-3875, at ¶ 8, fn. 3 (2d Dist.); *Jones*, 2022-Ohio-1986, at ¶ 16 (12th Dist.). *See also Boyd v. Boyd*, 2022-Ohio-4775, ¶ 16 (10th Dist.) ("It is well-established law that a reviewing court cannot consider evidence outside the record on appeal"). Filings Mother made in the trial court detailing events that occurred after the trial court's issuance of its September 5, 2025 decision and her subsequent filing of a notice of appeal on September 11, 2025 are not properly before us. *See Sullivan v. Curry*, 2010-Ohio-5041, ¶ 54 (2d Dist.) (recognizing that an appellate court cannot consider matters in the record that occurred after the filing of a notice of appeal).

{¶ 37} Mother's arguments in her third assignment of error are without merit and the assignment of error is hereby overruled.

### D. In Camera Interview of the Children

{¶ 38} Assignment of Error No. 4:

{¶ 39} THE COURT MISAPPLIED ALLEGATIONS OF "COACHING," RELIED ON AN IN-CAMERA INTERVIEW OF BOTH CHILDREN TOGETHER TO DISCOUNT DISCLOSURES, AND DREW ADVERSE CREDIBILITY CONCLUSIONS UNTETHERED TO THE TRANSCRIPT OR EXPERT EVIDENCE.

{¶ 40} In her fourth assignment of error, Mother argues the trial court improperly concluded that "the children appeared to have been coached" following the court's review of the magistrate's in camera interview of the children. Mother further argues it was

improper for the magistrate to conduct an in camera interview of both children together at the same time.

{¶ 41} We find no merit to Mother's arguments. Pursuant to R.C. 3109.04(B)(1), for the purposes of resolving any issues related to the allocation of parental rights and responsibilities for the care of children, "the court, in its discretion may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation." The interview "shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview." R.C. 3109.04(B)(2)(c). When conducting the interview,

> [t]he court first shall determine the reasoning ability of the child. If the court determines that the child does not have sufficient reasoning ability to express the child's wishes and concern with respect to the allocation of parental rights and responsibilities for the care of the child, it shall not determine the child's wishes and concerns with respect to the allocation. If the court determines that the child has sufficient reasoning ability to express the child's wishes or concerns with respect to the allocation, it then shall determine whether, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation. If the court determines that, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation, it shall not determine the child's wishes and concerns with respect to the allocation and shall enter its written findings of fact and opinion in the journal. If the court determines that it would be in the best interests of the child to determine the child's wishes and concerns with respect to the allocation, it shall proceed to make that determination.

R.C. 3109.04(B)(2)(b).

{¶ 42} Nothing in R.C. 3109.04 prohibits the court from interviewing multiple children together in chambers rather than separately interviewing each child. While the better practice may be to separately interview each child to ensure candidness and free discussion of each child's wishes and concerns, the magistrate acted within its discretion in conducting a single interview involving both children. After all, "a trial court has the inherent power to manage the course of its proceedings and docket." *In re C.S.,* 2015-Ohio-3937, ¶ 11 (12th Dist.).

{¶ 43} The magistrate's decision to interview the children together did not prevent the parties' children from expressing their respective wishes or concerns. Both the magistrate and the trial court, upon conducting an independent review of the recorded proceedings, considered the children's expressed wishes and concerns as part of the best interest analysis before terminating shared parenting and allocating parental rights and responsibilities, as required by R.C. 3109.04(F)(1)(b). Though Mother challenges the trial court's determination that the children "appeared to have been coached," we find no error in this finding. The trial court was in the best position to assess the veracity and credibility of the children's statements. *See In re D.M.B.-M.*, 2024-Ohio-675, ¶ 21 (5th Dist.) ("[t]he trial court heard the evidence, and was in the best position to ascertain the veracity of the witnesses, including the children when interviewed in camera"). Mother's arguments are without merit and her fourth assignment of error is hereby overruled.

### E. Emergency Motions and Stay Requests

{¶ 44} Assignment of Error No. 5:

{¶ 45} THE COURT VIOLATED DUE PROCESS AND ABUSED ITS DISCRETION BY FAILING TO TIMELY ADJUDICATE MULTIPLE EMERGENCY MOTIONS AND STAY REQUESTS AFTER THE SEPTEMBER 5, 2025 ORDER, DESPITE ONGOING CRISIS INDICATORS AND ACTIVE CPS/LAW-ENFORCEMENT INVOLVEMENT.

{¶ 46} In her fifth assignment of error, Mother argues the trial court erred in failing to timely rule on various emergency motions and stay requests she filed after the trial court entered its September 5, 2025 decision and after she filed a notice of appeal of said decision on September 11, 2025. Mother alleges these motions address various events that occurred after Father became the residential parent.

{¶ 47} As discussed in our resolution of Mother's third assignment of error, filings Mother made in the trial court detailing events that occurred after the trial court's issuance of its September 5, 2025 decision and her subsequent filing of a notice of appeal on September 11, 2025 are not properly before us. *See Sullivan*, 2010-Ohio-5041, at ¶ 54 (2d Dist.) (recognizing that an appellate court cannot consider matters in the record that occurred after the filing of a notice of appeal). This court does not have jurisdiction to review events that occurred following Mother's filing of a notice of appeal of the September 5, 2025 decision. Mother's fifth assignment of error is, therefore, overruled.

## F. Contempt Finding

{¶ 48} Assignment of Error No. 6:

{¶ 49} THE COURT'S CONTEMPT FINDING AND FEE/SANCTION ORDERS MUST BE VACATED BECAUSE THEY ARE INSEPARABLE FROM, AND WERE MATERIALLY INFLUENCED BY, THE ERRONEOUS CUSTODY AND PARENTING DETERMINATIONS; AT MINIMUM, REIMBURSEMENT AND FEE EQUALIZATION SHOULD BE ORDERED ON REMAND.

{¶ 50} In her sixth assignment of error, Mother argues the court erred in holding her in contempt for willfully disregarding Father's parenting rights and parenting time. She contends Father's own actions resulted in him not having parenting time with the children and argues the imposed contempt sanctions should be "vacated or re-balanced" to reflect "safety-motivated boundaries" she enforced.

{¶ 51} "[C]ontempt results 'when a party before a court disregards or disobeys an order or command of judicial authority.'" *Cottrell v. Cottrell*, 2013-Ohio-2397, ¶ 11 (12th Dist.), quoting *Spickler v. Spickler*, 2003-Ohio-3553, ¶ 38 (7th Dist.). "To support a contempt finding, the moving party must establish, by clear and convincing evidence, the existence of a valid court order, that the offending party had knowledge of the order, and that the offending party violated such order." *Ungerleider v. Ungerleider*, 2011-Ohio-2600, ¶ 36 (12th Dist.). An appellate court will not reverse the trial court's ruling on a motion for contempt absent an abuse of discretion, which implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Cottrell* at ¶ 12.

{¶ 52} Father moved for contempt on the basis that he was denied parenting time in violation of court orders governing his parenting time.[3] In the magistrate's decision, the magistrate detailed testimony from Father and Father's wife describing Father's exercise of parenting time with the children and multiple instances where Father's parenting time was denied by Mother. On multiple occasions, Father appeared for visitation with the children and, because of Mother's actions and her refusal to facilitate the visitation, was unable to exercise his parenting time. Father described times where he was unable to pick the children up from their school due to Mother's actions, instances where Mother changed the location of where Father was supposed to pick up the children or unilaterally cancelled his parenting time at the last minute, and even times when Mother stood in front of her car door to block the children from exiting her vehicle to join Father for his visitation.

---

3. We note that Father cited to a September 29, 2023 Magistrate's Decision as the order being violated in his motion for contempt. The September 29, 2023 Magistrate's Decision was never adopted by the trial court and was therefore never in effect. See Civ.R. 53(D)(4)(a) ("A magistrate's decision is not effective unless adopted by the court"). *See also Hart v. Spenceley*, 2013-Ohio-653, ¶ 11 (12th Dist.) ("A trial court must act on a magistrate's decision in order to give the recommendation the force of law"). However, the parenting orders that predated the Magistrate's September 29, 2023 decision were in effect. Those orders, provided a proper basis for holding Mother in contempt, as the prior orders granted Father parenting time with the children on an alternating schedule and Mother willfully disregarded those orders by preventing Father from exercising his parenting time since November 17, 2023.

The magistrate and trial court found Father's and his witnesses' testimony on this issue credible. The trial court concluded "[t]he evidence was abundant that [Mother] continued to willfully disregard [Father's] parenting rights" as Father had not been permitted visitation with the children since November 17, 2023. Though Mother denies engaging in some of the aforementioned behavior and tries to excuse her behavior by arguing that Father's parenting time was withheld for safety and therapeutic reasons, the trial court concluded that "Mother did not present any testimony demonstrating that she was unable to comply" with the parenting orders. Mother "continued to willfully disregard" Father's right to parenting time with the children.

{¶ 53} As previously discussed, Mother's failure to file a transcript restricts the scope of review at both the trial court and appellate levels. *Holden v. Holden*, 2019-Ohio-5031, ¶ 11 (12th Dist.). Appellate review is "limited to whether the trial court correctly applied the law to the magistrate's factual findings." *Id.* Based on the limited record before us, and the trial court's proper application of the law to the magistrate's factual findings, we conclude that the trial court did not err in finding Mother in contempt for violating court orders governing Father's parenting time. Mother's sixth assignment of error is overruled.

## IV. CONCLUSION

{¶ 54} Having found no merit to any of Mother's assignments of error, we hereby affirm the September 4, 2024 judgment of the trial court.

M. POWELL and SIEBERT, JJ., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*